UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No:   21-CR-10059-DJC |
| | ) | |
| PATRICK PLUMMER, | ) | |
| | ) | |
| Defendant. | ) | |

---

### GOVERNMENT'S SENTENCING MEMORANDUM

---

Defendant Patrick Plummer pled guilty to the above-docketed indictment, which charges him with one count of attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b); one count of travel to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b); and one count of transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1).  For the reasons outlined below and to be articulated at the sentencing hearing, the government respectfully requests that this Court impose a sentence that includes a term of incarceration of 168 months and a term of supervised release of five years.

## **FACTS**

The government relies on and incorporates the facts as set forth in the statement of offense conduct in paragraphs 6 through 18 of the Presentence Investigation Report ("PSR"), as well Probation's assessment of offender characteristics (PSR ¶¶ 57-73).

To summarize the relevant facts briefly:  An undercover police officer posing as a 13-year-old girl ("the UC") received a private message from the defendant while in a chat room designated for Massachusetts teenagers.  The defendant indicated that he was 24 years old and lived in Maine. The defendant initially identified himself as "Patrick Smith," and later identified himself as "Patrick Dyer."  After confirming the UC really was 13 and was a virgin, the defendant asked if

he could take her virginity and made arrangements to travel to Georgetown, Massachusetts to meet her.  The defendant discussed with the UC the specific sexual conduct that he wanted to engage in with her:  He asked the UC if he could touch her butt; play with her breasts; push his penis inside of her while she was bent over; and ejaculate inside of her vagina, mouth, or butt.  After confirming that they were "gonna have sex" and directing the UC to wear a skirt without underwear and a tank top without a bra, on September 26, 2020, the defendant traveled from Maine to meet the UC in Massachusetts.

Upon arrival at the designated meeting spot, the defendant was arrested and four cellular telephones, one laptop computer, and a spring-release knife were taken from the car that he had driven from Maine to Georgetown.  The defendant admitted that he had traveled to Georgetown from his home in Parsonsfield, Maine.  He further admitted that he had been fantasizing about having sex with underage girls for approximately five years, and at that time was talking online to approximately ten underage girls in various applications.  This was consistent with the UC's knowledge that the defendant was soliciting sexual activity from three other undercover officers posing as 14-year-old girls at the same time that he was chatting with the UC.

During subsequent forensic analysis of the defendant's devices, investigators recovered over 7,000 images and approximately 74 videos of child pornography, including multiple images, on multiple devices, of female children as young as two to four years old being bound and tortured. These included (1) an image of a nude female child approximately 2-4 years of age with a plastic bag around her head and a rope around her neck, with the word "rape" handwritten on her stomach, (2) an image of a nude female child aged 2-4 years old with black ropes around her wrists spreading her arms apart, tape or cloth covering her mouth, and the text "Baby Bondage" written on the photo above her, and (3) an image of a nude female child approximately 3-5 years old seated on the lap

2

of a nude adult male, wearing handcuffs, and holding the man's erect penis in her hands.

Investigators also determined that the defendant had used a false female name to pose as a 19-year-old female and solicit photographs from other, younger females for distribution to other Kik application users. The defendant used graphic threats to compel younger girls to share images with him. For example, he messaged a Kik user who claimed to be a 10-year-old female with such messages as: "You will talk to me and I'd love to rape you and make you cry," "I've always wanted to fuck a 10 year old pussy," "I'll chop you up into a million pieces ;) then fuck your dead body."

Additionally, investigators found that just weeks before the defendant committed the instant offense, he was contacted by members of a civilian group in Maine who were posing on the internet as a 15-year-old girl. Upon arriving to meet this "underage girl," the defendant found only two adult men with a video camera who forced him to call his mother to tell her what he was doing. The video of this encounter was posted to a Youtube channel called "Predator Poachers Maine," and was titled "MARRIED WITH KIDS PRED CALLS MOMMA!"

## DISCUSSION

### I.      Sentencing Guideline Calculation, Restitution, and Special Assessments

Sentencing Guideline Calculation

Based on its computation of the defendant's total offense level as 39 and his criminal history category as I, the United States Probation Office ("Probation") has calculated a Guidelines sentence in this case to include a term of incarceration from 262 to 327 months and a range of supervised release from five years to life.

The government agrees with Probation's calculation of the defendant's Offense Level and Criminal History Category, and thus agrees with its determination of his Guidelines Sentencing

Range ("GSR").  However, as outlined below, the government believes that a practical application of the Guidelines may differ in some respects from this technically correct calculation of the GSR.

<u>Restitution</u>

The government has submitted restitution requests to the defendant on behalf of 20 victims from the 267 identified child pornography series implicated in this case and anticipates that the parties may be able to come to an agreement regarding appropriate awards for those victims.  Those requests will be submitted under seal.  This Court need not make a determination of restitution at the sentencing hearing, but must do so within 90 days of sentencing, pursuant to 18 U.S.C. § 3664(d)(5).  The government therefore requests that the Court schedule a date subsequent to the sentencing hearing, by which date the parties must submit memoranda, either jointly or separately, advocating for an appropriate award for each victim who has demonstrated the right to restitution.

<u>Special Assessments</u>

As this Court is aware, Title 18, United States Code, Section 3014 provides that courts "shall assess an amount of $5,000 on any non-indigent person" convicted of enumerated offenses related to human trafficking and sexual exploitation, including distribution and possession of child pornography in violation of 18 U.S.C. § 2252A.  *Id.* § 3014(a).  Where the government believes that the defendant will be able to establish that he is indigent – and thus not subject to the special assessment – and where he surely will be responsible for paying some amount in restitution, the government does not advocate for the imposition of this "JVTA" assessment.

The defendant's ability to pay also is a factor to consider in determining what assessment, if any, this Court should impose pursuant to 18 U.S.C. § 2259A.[1]  Where the defendant will be

---

[1]  Monies paid under this section are deposited and pooled in the "Child Pornography Victims Reserve" established in 18 U.S.C. § 2259B, which is the fund from which child pornography

required to pay a significant amount of restitution to victims specifically identified, the government does not advocate for the imposition of this "AVAA" assessment.

## II.    Application of the Section 3553(a) Factors

Although the GSR applicable in this case represents a significant range of punishment, the government contends nonetheless that a sentence derived from the application of appropriate Guidelines enhancements to the defendant's conduct is one that fits the crimes that the defendant has pled guilty to. Based on an evaluation of all of the § 3553(a) factors, this Court should impose the government's recommended sentence that includes a term of incarceration of 168 months, which correlates to the government's interpretation of the specific offense characteristics that should be considered in this case. The government recognizes that it is difficult to quantify exactly how many months would satisfy the Court's obligation to impose a sentence that is just, that adequately would deter both this defendant and others who might commit the same type of crime, and that would protect the most vulnerable members of our society. Ultimately, this Court can be confident that the government's proposed sentence will achieve all of these goals of sentencing. A sentence tethered to the Guidelines in the manner the government suggests is reasonable and warranted in this case because the applicable enhancements accurately reflect and account for the nature and circumstances of the defendant's offenses, as described briefly below:

Group 1: Counts 1 and 2 (Attempted Enticement of a Minor)

a.    **§ 2G1.3(b)(2)(A) (knowing misrepresentation of identity)**: The government agrees with Probation's assessment of this enhancement. In this case, the defendant told the UC that he was 24 years old, and, initially, that his name was "Patrick Smith." Later, he identified

---

victims may, if they so choose, receive a one-time fixed amount of compensation instead of seeking restitution on a case-by-case basis.

himself as "Patrick Dyer."  The effect of these misrepresentations was to make it appear that the defendant was closer in age to the child than he actually was and presumably to conceal evidence of his prior attempts to entice children, such as the video of him being confronted by local civilians that the defendant knew to have been posted on the internet.  Thus, the defendant made these misrepresentations with the ultimate goal of convincing a 13-year-old child to have sex with him, and this enhancement applies to the defendant's conduct.

The Government recognizes however that the defendant's misrepresentations were relatively limited in duration and scope.  They lasted only for an approximately two-week period and only misrepresented the defendant's age and name slightly.  *Compare United States v. Grauer*, 701 F.3d 318, 326 (8th Cir. 2012) (crediting defendant's claim that "one-time misrepresentations of his age ('like 49,' instead of 58) and his name ('Gray,' instead of Grauer) alone may not be enough to justify enhancement, but applying upholding enhancement on the basis of other conduct in the record), *with United States v. Holt*, 510 F.3d 1007, 1011 (9th Cir. 2007) (holding that enhancement was warranted because defendant had misrepresented his age and identity for six months of sexually explicit Internet chatting).  **So, while the government believes that Probation appropriately included this enhancement in its GSR calculation, the government does not advocate for its application here.**

The defendant objects to the applicability of this enhancement because he contends that its "explicit terms . . . require the presence of an actual minor," even though Application Note 1's definition of "minor" includes "an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years," § 2G1.3, cmt. n.1.  The defendant argues that this definition of minor should not be given any weight because it contradicts the "plain meaning" of the guideline's reference to a "minor."    Because the defendant contends the term

minor is "completely unambiguous," he argues that the Sentencing Commission's interpretation of its guideline in Application Note 1 is entitled to no deference, pursuant to *Kisor v. Wilkie*, -- U.S.--, 139 S. Ct. 2400 (2019).  If the Court declines to apply the enhancement for the reason noted above, it need not address this *Kisor*-based claim.

In any event, the claim fails because, without reference to the commentary, § 2G1.3(b)(2) properly is interpreted to apply in cases involving fictitious minors.  The court "use[s] conventional methods of statutory construction . . . to determine the meaning the Sentencing Commission intended to give to a Guidelines term."  *United States v. Nolte*, 844 F.3d 331, 335 (1st Cir. 2016) (citing *United States v. Damon*, 595 F.3d 395, 400 (1st Cir. 2010)).  Thus, the court starts with the plain meaning of the text in the context of the guideline as a whole, understanding that "[w]ords in a statute are not islands but 'must be read in their context and with a view to their place in the overall statutory scheme.'"  *New Hampshire Lottery Comm'n v. Rosen*, 986 F.3d 38, 55 (1st Cir. 2021) (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, (2000)); *see also, e.g.*, *Gundy v. United States*, -- U.S.--, 139 S. Ct. 2116, 2126 (2019) (holding that courts should not "construe words in a vacuum," but rather should read them "in their context and with a view to their place in the overall statutory scheme").  Accordingly, courts prefer a reading of a statute that "harmonizes the various provisions in [it] and avoids the oddities that [a contrary] interpretation would create."  *New Hampshire Lottery Comm'n*, 986 F.3d at 58 (alterations in original) (internal quotation marks omitted) (quoting *Republic of Sudan v. Harrison*, -- U.S.--, 139 S. Ct. 1048, 1060, (2019)).  Additionally, "beyond context and structure, the Court often looks to 'history [and] purpose' to divine the meaning of language."  *Gundy*, 139 S. Ct. at 2126 (alteration in original) (quoting *Maracich v. Spears*, 570 U.S. 48, 76 (2013)).

Here, the context in which the word "minor" is used demonstrates unambiguously that the guideline applies to cases involving fictitious minors.  The text of the disputed guideline is as follows:

> If (A) the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct . . . increase by 2 levels.

§ 2G1.3(b)(2)(A).  By its plain language, the guideline focuses on the defendant's intent insofar as it applies to offenses in which a defendant knowingly misrepresents his identity in order to bring about a specific result, which is to convince a child to have sex with him.

The instant offense is one such offense.  Here, the defendant has admitted in connection with his guilty plea that he violated 18 U.S.C. § 2422(b), the title of which is "[c]oercion and enticement."  In relevant part, this statute provides:

> Whoever . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b).  This language parallels the language of the guideline: the defendant must knowingly act to bring about a certain result, which is to convince a child to have sex with him.  This alignment makes sense, because § 2G1.3 applies to all offenses under 18 U.S.C. § 2422(b).

Accordingly, to understand the plain language of § 2G1.3, interpretations of the language of 18 U.S.C. § 2422(b) are instructive, because it is in the context of 18 U.S.C. § 2422(b) crimes that the Commission developed § 2G1.3 punishments.  As to 18 U.S.C. § 2422(b), courts "without exception" have recognized that the statute is violated where a defendant attempts to convince a fictitious minor to have sex with him, even though the statute describes the target of the offense as an "individual who has not attained the age of 18 years."  *See United States v. Saldana-Rivera*,

914 F.3d 721, 724-26 (1st Cir. 2019) (rejecting a factual impossibility defense to an 18 U.S.C. § 2422(b) charge and collecting cases).   That is because courts recognize that the statute criminalizes the defendant's *intent*, without regard to the actual consequences.   As the First Circuit explained in holding that 18 U.S.C. § 2422(b) applied where a defendant communicated only with an adult undercover law enforcement agent, "attempt" crimes under federal law train courts' attention on the defendant's *intent* to commit the substantive offense.   *See, e.g.*, *id.* at 725 *United States v. Berk*, 652 F.3d 132, 140 (1st Cir. 2011) (rejecting defendant's argument that he could not be guilty of this offense because he only had communicated with adults).   Indeed, the defendant here is not contesting that he is not in fact guilty of violating 18 U.S.C. § 2422(b) because his case does not involve an actual minor.   Rather, the defendant has admitted that he violated the statute on the basis of his intent when he enticed a minor to have sex with him, notwithstanding that the minor proved to be fictitious.   As the First Circuit has recognized, "the statutory text" and relevant case law dictate that 18 U.S.C. § 2422(b) applies to cases where the defendant does not communicate with a real minor.   *Saldana-Rivera*, 914 F.3d at 726 ("Having read the statutory text and surveyed the case law . . . we see no reason to chart a minority path."); *see also United States v. Tykarsky*, 446 F.3d 458, 466 (3d Cir. 2006) ("[T]he plain language of the statute, which includes an "attempt" provision, indicates that something less than the actual persuasion of a minor is necessary for conviction.").

There is no reason to adopt the opposite interpretation in the guideline that applies to this statute.   The plain language of  § 2G1.3(b)(2)(A) parallels that of § 2422(b) insofar as its focus is on the defendant's intent.   Accordingly, it should be read to encompass all attempts that have the requisite intent, even where the intent cannot be realized because there is no real child.   The mere fact that the guideline uses the word "minor" does not compel a contrary interpretation.   After all,

section 2422(b) requires that the defendant's conduct be directed at an "individual who has not attained the age of 18 years," and that has not prevented every court to address the question from determining that the statute applies where such the underage individual is fictitious.

By its plain language, read in its proper context, the enhancement under § 2G1.3(b)(2)(A) applies. "The offense" here was an attempt to entice a minor to engage in prohibited sexual conduct, and it is undisputed that this "offense" was committed on the basis of the defendant's intentional conduct, notwithstanding that the "minor" was fictitious. The defendant has made no argument, never mind a convincing argument, for why this court should read § 2G1.3(b)(2)(A) in a manner inconsistent with the universal interpretation of the statute to which it applies, 18 U.S.C. § 2422(b).

This interpretation also is consistent with the purpose and history of the Guideline enhancements. The Commission amended the commentary to § 2G1.3 in November 2004 to replace a definition of minor limited to individuals under age 18 with the definition of "minor" that Plummer now asserts is invalid. This Amendment was part of a package of changes meant to implement the directives to the Commission regarding child pornography and sexual abuse offenses in the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 (the "PROTECT Act"), Pub. L. 108–21. Congress had enacted the PROTECT Act in response to "a series of atrocious and high-profile child abduction and sexual abuse cases" and accordingly the Act's purpose was "to strengthen the laws and procedures for detecting, investigating, prosecuting and incarcerating child kidnappers and sexual offenders." *United States v. Grigg*, 442 F.3d 560, 562–63 (7th Cir. 2006). The Commission responded to the PROTECT Act in a number of ways, one of which was to revise the definition of "minor" in the commentary to § 2G1.3. The Commission explained that it had "expand[ed] the definition of 'minor'" in

"response to the increase in the use of undercover officers in child pornography investigations." *See* United States Sentencing Commission, Amendments to the Sentencing Guidelines (May 10, 2004), *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20040430_RF_Amendments_0.pdf.  Taken together, this history confirms that the Commission intended § 2G1.3 to apply broadly, in a manner that would capture more conduct dangerous to children.  The only interpretation of the guideline's plain language that is consistent with this intent includes cases with fictitious minors.

In addition to being consistent with the plain text, purpose, and history of § 2G1.3(b)(2)(A), reading the enhancement to include cases involving fictious minors "avoids the oddities" that the defendant's interpretation would create.  *New Hampshire Lottery Comm'n*, 986 F.3d at 58.  As outlined above, the defendant's interpretation would create a situation where a defendant could be *convicted* of violating 18 U.S.C. § 2422(b) on the basis that he had attempted to persuade, induce, entice, coerce, or facilitate the travel of, a fictitious minor to engage in prohibited sexual conduct, but the defendant could not be *sentenced* pursuant to § 2G1.3(b)(2)(A) on the basis that he had done exactly that.  Additionally, the defendant's interpretation would discourage law enforcement from using "sting operations and decoys" rather than real children "to police the criminal coercion and persuasion of minors for sex," which the First Circuit has recognized makes little sense given that "[t]hese common [law enforcement] practices have led to convictions that [the court has] upheld." *Saldana-Rivera*, 914 F.3d at 725 n.4 (1st Cir. 2019) (collecting cases).

In sum, the issue of "deference" to guideline commentary does not arise here because, using ordinary principles of statutory construction, the meaning of the term "minor" is clear from both the context and the purpose of the guideline.  *See Kisor*, 139 S. Ct. at 2414.

Even if this Court disagrees, the defendant's argument still fails because the fact that 18 U.S.C. § 2422(b) encompasses attempts to entice fictitious minors, and the text of § 2G1.3(b)(2)(A) does not *exclude* such offenses from the scope of the enhancements, creates a "genuine ambiguity" that requires deference to the Commission's interpretation. *Kisor*, 139 S. Ct. at 2414 (2019) ("Congress intended for courts to defer to agencies when they interpret their own ambiguous rules."). If the Court finds that the text of § 2G1.3(b)(2)(A) is not clear even after exhausting the steps of statutory interpretation outlined above, and is "genuinely ambiguous," the Court must proceed to the next two steps that *Kisor* requires: The Court must evaluate whether the agency's reading is "reasonable," and also, "make an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight," based on such factors as whether it is an official interpretation that implicates agency expertise and reflects a fair and considered agency judgment. *Id.* at 2415-18.

Here, both additional *Kisor* factors counsel in favor of deference to the Commission's interpretation. The Commission's interpretation is reasonable because, as outlined above, it is consistent with the purpose of 2G1.3(b)(2)(A) and the widespread judicial recognition that real children need not be involved where the offense at issue requires only an *attempt* at enticement. The Commission's interpretation of 2G1.3(b)(2)(A) in the commentary thereto is the agency's official published position, which is derived from its substantive expertise regarding sentencing issues and represents a fair and considered judgment resulting from the agency's notice-and-comment procedures and continuous amendment process.

By either its plain text or pursuant to the Commission's interpretation in the commentary, § 2G1.3(b)(2)(A) properly applies in this case. Probation appropriately included this enhancement in its GSR calculation, though **the government is not advocating for its application here**.

b. **§ 2G1.3(b)(3) (use of a computer)**: The government agrees with Probation's assessment of this enhancement. However, the government concedes that in many cases, the application of this enhancement makes less sense than some others, given that virtually all child pornography offenses today involve the use of computers. Here, the defendant's use of technology to facilitate his criminal behavior is not so sophisticated as to merit the application of this enhancement. **So, while the government believes that Probation appropriately included the enhancement in its GSR calculation, the government does not advocate for its application here.**

As with the enhancement above under § 2G1.3(b)(2)(A), the defendant objects to this enhancement because, despite Application Note 1's plain language to the contrary, § 2G1.3, cmt. n.1, he believes that it can only apply when the case involves an actual minor. If the Court declines to apply the enhancement for the reason noted above, it need not address this *Kisor*-based claim.

In any event, the claim fails because as was the case with § 2G1.3(b)(2)(A), without reference to the commentary, the plain text of § 2G1.3(b)(3) requires that "the offense involved" the use of a computer to "persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct." Again, the offense in this case is the offense of attempting to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct, and courts agree that committing this offense does not require an actual minor. Thus, the context of the enhancement makes clear that the term "minor" includes fictitious minors, which is the only reading that is consistent with the purpose of the enhancement and avoids absurd results. To the extent that the Court disagrees and finds that the statute genuinely is ambiguous, the remaining steps required under *Kisor* require the Court to defer to the reasonable, official, well-considered, and expert agency interpretation reflected in § 2G1.3 cmt. n.1.

13

Probation appropriately included this enhancement in its GSR calculation, **though the government is not advocating for its application here.**

Group 2: Count 3 (Transportation of Child Pornography)

a.      **§ 2G2.2(b)(2) (prepubescent minor)**: The government agrees with Probation's assessment of this enhancement.  This defendant's very large collection consisted mainly of images of children in the range of six to ten years old, which distinguishes him from many other defendants who possess, distribute, receive, and produce images of children who are *not* prepubescent.  This distinction merits heightened punishment given that a victim's vulnerability often directly correlates to his or her age.  This defendant should be held accountable for his victimization of the most vulnerable members of our society through the application of this enhancement.

b.      **§ 2G2.2(b)(3)(F) (distribution)**:  The government agrees with Probation's assessment of this enhancement, on the basis of the defendant's admission that he shared images depicting child pornography with other individuals through Kik.  The government often takes the position that, in a typical case, the (typically applied) two-level enhancement for distribution reasonably could be discounted, since a defendant charged with distribution would not benefit from the two-level discount applied to offenders charged with receipt – *i.e.*, those with no intent to distribute.  *See* § 2G2.2(b)(1).  This is not a typical case, and the defendant is not charged here with distribution, so some enhancement to reflect this "extra" distribution should apply.

c.      **§ 2G2.2(b)(4)(A) and (B) (sadistic/masochistic conduct and exploitation of infant/toddler)**: The government agrees with Probation's assessment of this enhancement.  This defendant had images in his collection depicting the abuse of toddlers, such as an image of a nude female child approximately 2-4 years of age with a plastic bag around her head and a rope around

her neck, with the word "rape" handwritten on her stomach.  The defendant also had an image of a nude female child aged 2-4 years old with black ropes around her wrists spreading her arms apart, tape or cloth covering her mouth, and the text "Baby Bondage" written on the photo above her.  Another image in the defendant's collection depicts a nude female child approximately 3-5 years old seated on the lap of a nude adult male, wearing handcuffs, and holding the man's erect penis in her hands.  A consumer of this type of material should be held accountable for such.

Here, the government's view is that the defendant's conduct merits a two-level enhancement.  These images described above are horrific, but they represent a minority of the 7,000 images and approximately 74 videos in the defendant's collection.  **So, while the government believes that Probation appropriately included the four-level enhancement in its GSR calculation, the government suggests that an application of this enhancement that most accurately comports with the defendant's conduct might increase his offense level by only two levels, rather than four.**

d. **§ 2G2.2(b)(5) (pattern of activity)**: The government agrees with Probation's assessment of this enhancement.  This defendant has been charged in at least three jurisdictions based on his attempts to persuade, induce, entice, coerce, and facilitate the travel of, a minor to engage in prohibited sexual conduct: twice in Massachusetts and once in New Hampshire.  Private citizens also documented by video a fourth attempt to have sex with a minor that the defendant made within weeks of the other three.  Because the charged conduct in Count One (derived from one of the Massachusetts charges) is activity involving the sexual abuse or exploitation of a minor, this Court need find only one additional instance of activity involving the sexual abuse or exploitation of a minor to apply this enhancement.  Here, there are at least three, and possibly more unaccounted for given the defendant's admission at the time of his arrest that he was talking to

approximately ten underage girls.  Particularly because so much of this conduct is uncharged, this enhancement should apply to hold the defendant accountable for repeatedly, and deliberately, attempting to convince children to have sex with him.

As with the enhancements above under §§ 2G1.3(b)(2) and 2G1.3(b)(3), the defendant objects to this enhancement because despite Application Note 1's plain language to the contrary, § 2G2.2, cmt. n.1, he believes that the enhancement only can apply when the case involves the presence of an actual minor.  For the reasons outlined above and discussed briefly here, the defendant's objection is unfounded and § 2G2.2(b)(5) applies in this case.

First, reading the term "minor" in the context of the guideline as a whole confirms that by its plain language, the guideline applies.  The language of § 2G2.2(b)(5) differs slightly from the language of the enhancements described above, but its meaning is clear.  § 2G2.2(b)(5) dictates:

> If the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels.

*Id.*  The language of the guideline is broad.  It does not distinguish between charged or uncharged conduct or require that the "pattern of activity" involve only the specific kind of conduct underlying "the offense," which here would be the Transportation of Child Pornography.  Rather, the guideline applies wherever a defendant has engaged in any pattern of activity that "involve[s]" any sexual abuse or exploitation of a minor.  As the First Circuit has recognized in a different context, to "involve" can mean "to relate closely" or to "connect closely," and these broader definitions of the term should be embraced where they are "more consistent with the 'natural reading of the text.'"  *United States v. McKenney*, 450 F.3d 39, 43 (1st Cir. 2006) (quoting *Dodd v. United States*, 545 U.S. 353 (2005).  In *McKenney*, the defendant had advocated for a narrow definition of "involve" that was found in dictionaries but, as applied to the statute in question, required, "to say the least, an awkward and unusual construction of the text."  *Id.* at 42-43.  The

First Circuit rejected the defendant's interpretation in favor of the broader definition of "involve" that was consistent with how the "term is used in common parlance." *Id.* at 43.

This Court should do the same here. Section 2G2.2(b)(5) is structured to apply broadly to a wide swath of conduct "involving" sexual abuse or exploitation of a minor. Reading "involving" as it "is used in common parlance" means that the guideline requires a defendant's a pattern of activity to "relate" or "connect closely" to sexual abuse or exploitation of a minor. Attempts to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct necessarily "relate" or "connect closely" to the sexual abuse or exploitation of a minor. That is true whether the minor is real or fictitious. Thus, this defendant's conduct falls squarely within the plain text of the guideline.

For the same reasons outlined in greater depth above, only this interpretation of the guideline is consistent with the guideline's purpose and history and avoids absurd results. Like § 2G1.3, § 2G2.2 was amended in November 2004 to expand the definition of "minor" in response to Congress's desire, reflected in the PROTECT Act, to strengthen the investigation, prosecution, and sentencing of child kidnappers and sexual offenders. The defendant's interpretation of § 2G2.2 directly would contravene this purpose by preventing courts from fully holding offenders accountable for their conduct in cases involving only fictitious children, and by discouraging law enforcement from utilizing all investigative techniques at their disposal. Thus, the § 2G2.2(b)(5) enhancement must be read to apply broadly, including to cases involving fictitious minors.

To the extent this Court disagrees that the defendant's conduct falls within the plain meaning of § 2G2.2(b)(5) because the term "involving" should be read in a broad, commonsense manner, the defendant's argument still fails because the multiple potential definitions of "involving" and "minor" create a "genuine ambiguity" that requires deference to the

Commission's interpretation.  *Kisor*, 139 S. Ct. at 2414 (2019) ("Congress intended for courts to defer to agencies when they interpret their own ambiguous rules.").  If the Court finds after exhausting the steps of statutory interpretation outlined above that the text of § 2G2.2(b)(5) is not clear but rather "genuinely ambiguous," then Court must proceed to the next two steps that *Kisor* requires:  The Court must evaluate whether the agency's reading is "reasonable," and also, "make an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight," based on such factors as whether it is an official interpretation that implicates agency expertise and reflects a fair and considered agency judgment.  *Id.* at 2415-18.

Here, both additional *Kisor* factors counsel in favor of deference to the Commission's interpretation.  The Commission's interpretation is reasonable because, as outlined above, it is consistent with the purpose of § 2G2.2(b)(5) and the widespread judicial recognition that attempts to persuade, induce, entice, coerce, or facilitate the travel of, a child to engage in prohibited sexual conduct need not involve real children.  Interpreting § 2G2.2(b)(5) to apply broadly to such conduct, which "relates" or "connects closely" to sexual abuse or exploitation of a minor, also accords with a common sense understanding of the guideline's language.  The Commission's interpretation of § 2G2.2(b)(5) in the commentary thereto is the agency's official published position, which is derived from its substantive expertise regarding sentencing issues and represents a fair and considered judgment resulting from the agency's notice-and-comment procedures and continuous amendment process.

Thus, by either its plain text or pursuant to the Commission's interpretation in the commentary, § 2G2.2(b)(5) properly applies in this case.

e.      **§ 2G2.2(b)(6) (use of a computer)**: For the same reasons outlined above as to the similar enhancement applied pursuant to § 2G1.3(b)(3), **while the government believes that**

Probation appropriately included this enhancement in its GSR calculation, the government does not advocate for its application here.

f.      **§ 2G2.2(b)(7)(D) (number of images)**:  The government agrees with Probation's assessment of this enhancement.  Without even accounting for the greater weight given to videos, this defendant had over 10 times the requisite number of images in his collection.  Although it may be relativity "easy" in the modern era to obtain over 600 images depicting child pornography, that still is a long way from the 7,000 images and approximately 74 images of child pornography that this defendant had in his collection.  The very fact that it is "easy" to obtain child pornography means that there often is no need for a defendant to hoard such a large number of images.  That this defendant nonetheless did so and brought his large collection with him when he traveled from Maine to Massachusetts to have sex with a child, demonstrates that this defendant was unwilling or unable to take the risk that he would not have a large amount of child pornography within reach at all times.  The enhancement should apply in such circumstances.

***

According to Probation's technically correct calculation of the Guidelines, the defendant would face a GSR of 262-327 months.  If the Court were to apply the Guidelines in the manner suggested by the government (*i.e.*, by totally discounting the two "use of computer" enhancements and the "misrepresentation of identity" enhancement, and by partially discounting the "S&M and infant/toddler" enhancement by two levels, for a total offense conduct reduction of four levels), the defendant would have a total offense level of 35, which corresponds to a GSR of 168-210 months.  The government recommends a term of incarceration of 168 months, which is the low end of this "practical interpretation" of the Guidelines.

***

A sentence to the low end of the Guidelines as calculated by the government to comport with the defendant's specific conduct in this case is appropriate here because of the nature and circumstances of the defendant's crime.  It is true that the defendant faces a mandatory minimum sentence of 10 years and a Guideline term of imprisonment of approximately 14 years.  But this is not a case where the defendant attempted to entice a single minor, which alone would be sufficiently egregious conduct to require imposition of the 10-year mandatory minimum.  Here, the defendant by his own admission was attempting to entice as many as 10 minors in order to fulfill what was not a fleeting fantasy, but a desire he confessed he had experienced for as long as five years.  The urgency and persistent nature of this desire is reflected in the fact that the defendant had a collection of over 7,000 images and approximately 74 images of child pornography and he was unwilling to leave it at home when he traveled to Massachusetts to meet the UC.

Also of note is the violent nature of both the child pornography with which the defendant traveled, and the threats he was willing to make to compel children to provide him with additional pornographic images that he could exchange on the internet.  As is described in detail in the PSR, the defendant possessed multiple images, on multiple devices, of children as young as two to four being bound and tortured.  The appalling violence of these images is mirrored by the appalling lengths to which the defendant was willing to go to obtain such imagery.  As is described in the PSR, the defendant while posing as a 19-year-old female, sent a Kik user who claimed to be a 10-year-old female residing in Hawaii requests for explicit images.  To reiterate what was described above, the defendant told this apparent child:  "You will talk to me and I'd love to rape you and make you cry," "I've always wanted to fuck a 10 year old pussy," "I'll chop you up into a million pieces ;) then fuck your dead body," "I'm outside your house," and I'll kill your family first and then you."

The defendant was not deterred by actions that private citizens took to shame and harass him publicly.  Though the government does not condone the actions of these civilians, they are relevant to this court's analysis insofar as they underscore the need for a significant sentence to deter this defendant's future crimes.  Alerting the defendant's mother to his conduct and publishing it on YouTube did nothing to deter this defendant.  Just weeks after what one would think was a traumatizing experience, the defendant contacted the UC in this case, who was just one of approximately 10 underage users with whom he was chatting at that time.

The government recognizes that it always is difficult to quantify in months or years "how much" is "enough" to achieve the goals of sentencing.  While the government's recommended sentence here is significant in length, it is not only reasonable, but also necessary in this case to promote respect for the law, to adequately punish the defendant for her criminal conduct, to deter her and others from offending in the same ways again, and for long-term protection of the public.

## CONCLUSION

For all of the foregoing reasons, the government respectfully recommends that this Court impose a sentence that includes a 168-month term of imprisonment, to be followed by five years of supervised release.  Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Respectfully Submitted,

RACHAEL S. ROLLINS
United States Attorney

Date: January 26, 2023

By: _____
Meghan C. Cleary
Assistant United States Attorney
United States Attorney's Office
One Courthouse Way
Boston, MA 02210
(617) 748-3136

## <u>CERTIFICATE OF SERVICE</u>

I, Meghan C. Cleary, hereby certify that the foregoing was filed through the Electronic Court filing system and will be sent electronically to the registered participant as identified on the Notice of Electronic filing:


Date: January 26, 2023

_____
Meghan C. Cleary
Assistant United States Attorney