UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:21-CR-10059-DJC |
| | ) | |
| | ) | |
| PATRICK PLUMMER | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

I.  **Introduction**

Thirty-one year old Patrick Plummer stands ready to be sentenced by this Court for the crimes for which he has accepted responsibility. It will be the first time he has been sentenced by any court in his life. PSR ¶¶ 49-56. Prior to the events of this case he had never been incarcerated, but has now been behind bars more than 28 months since his arrest on September 26, 2020. Id; PSR p.2. When he was arrested that day, he admitted the specific crime for which he had been arrested and additional, similar shameful behavior. PSR ¶ 11. He later pled guilty knowing he faced a mandatory minimum sentence of 10 years. In addition to his confession and his plea, he has accepted responsibility by already beginning the long process of rehabilitation. Exhibit C, Documentation of Programming.

The probation department has calculated the advisory sentencing range as 262 to 327 months, PSR ¶ 75, but even the government acknowledges that a sentence within that range would be excessive and instead recommends 168 months. Dkt. 64, Government's Sentencing

1

Memorandum, p.1. In fact, for reasons explained below the correct advisory range is 151 to 188 months. However, for some of the reasons advocated by the government and particularly in light of the mandatory sentencing factors of 18 U.S.C. § 3553(a), Patrick Plummer should not receive a sentence more than the mandatory 120 months. For Patrick Plummer, such a sentence will be a life-changing event. As explained below, it is a sentence that is "sufficient but *not greater than necessary*" to achieve the goals of sentencing. 18 U.S.C. § 3553(a)(1)(emphasis added). In other words, a 10-year sentence for this individual in this case is a "sentence that is *minimally* sufficient to achieve the broad goals of sentencing." *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008) (emphasis added).

### II.     **The correct application of the sentencing guidelines results in an advisory range of 151 to 188 months**.

As noted in the defendant's objections to the Presentence Report, the probation department incorrectly applied three sentencing enhancements. These are: 1) a two-point enhancement for inducement of a minor to engage in prohibited sexual conduct, PSR ¶ 25a; 2) a two-point enhancement for use of a computer to induce a minor to engage in prohibited sexual conduct, PSR ¶ 26; and 3) a five-point enhancement for a pattern of activity involving the sexual exploitation of a minor. PSR ¶ 33a.

The defense agrees with the probation department that if these three enhancements properly applied, they would be applied to different offense groups. As probation has determined, the two separate two-point enhancements for inducement of a minor and use of a computer to induce a minor would apply to Offense Group One, which includes Count One, Attempted Enticement of

a Minor, and Count Two, Travel With Intent to Engage in Illicit Sexual Conduct With a Minor. PSR ¶¶ 25a, 26. Probation has determined that with those two enhancements the Adjusted Offense Level for Group One is 32, but because the enhancements do not apply for reasons explained below the Adjusted Offense Level for Group One should in fact be 28. PSR ¶ 30. Counts One and Two group together because they cover the same conduct- Mr. Plummer's communications with an undercover officer he believed was a minor in order to arrange a sexual encounter. PSR ¶¶ 7-11.

The third incorrect enhancement is for a pattern of activity involving the sexual exploitation of a minor. PSR ¶ 33a. The defense agrees that if that enhancement properly applied, it would only apply to Offense Group Two, which includes only Count Three, Transportation of Child Pornography. That offense covers different conduct than that covered by the two offenses in Group One, namely, the discovery of child pornography on Mr. Plummer's electronic devices after his arrest. PSR ¶¶ 12-15. The incorrectly applied five-point pattern of activity enhancement results in an Adjusted Offense Level for Group Two of 42 when it should in fact be 37. PSR ¶ 39.

Under the multiple count adjustment rules of USSG § 3D1.4, the highest offense level from different groups is the starting point. That level may then increase depending on the relative severity of the offense levels for other groups. In this case, probation has determined that the offense level for Group Two is 42 and the offense level for Group One is 32. PSR ¶ 40. Because the two groups are more than nine levels apart there is no increase to the higher offense level. Id; USSG § 3D1.4(c). Thus, because the offense level for Group Two is the highest, the five-point

pattern of activity enhancement that only applies to that group has the greatest effect on the advisory range.

    A. <u>Application of enhancements that involve a "minor" in a case that involves an undercover officer pretending to be a minor is unreasonable and violates the Supreme Court's holdings in *Stinson* and *Kisor*.</u>

While the five-point pattern of activity enhancement for Offense Group Two has the greatest impact on the Total Offense Level, and thus the advisory range, all three enhancements are subject to the same defense challenge- that Mr. Plummer's conduct did not involve actual minors, and that the commentary definition that includes an undercover officer within the definition of minor should be disregarded because it violates the federal statutory definition of minor and is inconsistent with, and is a plainly erroneous reading of, the guideline itself. *Stinson v. United States*, 508 U.S. 36, 37 (1993).

The two-point enhancements for inducement of a minor and use of a computer to induce a minor that probation applied to Offense Group One come from USSG § 2G1.3. The five-point enhancement for pattern of activity comes from USSG § 2G2.2. Both guidelines simply use the word "minor" within the guidelines themselves. "Minor" has a clear meaning- a person who has not reached the age of consent. For all three offenses of conviction, Congress has defined "minor" as "any person under the age of eighteen years." 18 U.S.C. § 2256(1).

However, in the commentary to these guidelines the Sentencing Commission radically expanded the plain statutory definition of minor to include "an undercover law enforcement officer who represented to a participant that the officer had not attained the age of eighteen

years." USSG §§ 2G1.3, 2G2.2, Application Note 1. Application of the enhancements based on this radical expansion violates the Supreme Court's holding in *Stinson*.

In *Stinson*, the Supreme Court explained that the Guidelines Manual "contains text of three varieties." *Stinson* at 41. These are the guidelines themselves, policy statements, and commentary. Id. Importantly, the Sentencing Reform Act, which created the Sentencing Commission and authorized the promulgation of guidelines, "does not in express terms authorize the issuance of commentary." Id.

As a result of the difference between commentary and the guidelines themselves, commentary is not "binding in all instances." *Stinson* at 43. If "commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline." *Stinson* at 43. The Court in *Stinson* determined that commentary cannot be treated as a contemporaneous statement of intent by the Sentencing Commission because commentary is not issued contemporaneously with the submission of the proposed guideline. Thus, the government's argument in this case that the commentary *is* an expression of the Commission's intent flatly contradicts the Supreme Court's ruling in *Stinson*. See Dkt. 64, Government's Sentencing Memorandum, pp. 10-11. Instead, in *Stinson* the Supreme Court determined that commentary should be "treated as an agency's interpretation of its own legislative rule." *Stinson* at 44.

In 2019 the Supreme Court specifically addressed the process for determining when deference should be given to an agency's interpretation of its own rule. Although sometimes entitled to deference, the Supreme Court made clear in *Kisor v. Wilkie* that there are important

limits to that deference and that it can only be applied in certain circumstances. *See generally Kisor v. Wilkie*, 139 S. Ct. 2400, 2414-2418 (2019).

First, agency interpretations of their own regulations are only entitled to deference when there is genuine ambiguity. *Kisor*, supra at 2415. In this case, the term "minor" in § 2G1.3 and § 2G2.2 is completely unambiguous. The dictionary definition of a minor is of a person who has not reached the age of majority. In contrast, no dictionary defines a minor as a person pretending to be a minor. Congress was just as unambiguous as the dictionary. For the three offenses of conviction, "'minor'" means any person under the age of eighteen years." 18 U.S.C. § 2256(1).

Second, even if the perfectly clear regulation here were somehow determined to be genuinely ambiguous, an agency's interpretation must still be "reasonable" for it to control. *Kisor*, supra at 2415. In *Kisor*, the Supreme Court was clear: "And let there be no mistake: That is a requirement an agency can fail." *Kisor* at 2416. In this case, the Sentencing Commission failed the reasonableness test by proclaiming that an undercover officer pretending to be a minor is a minor. This is an unreasonable interpretation in light of the clear meaning of the word and Congress' explicit statutory definition. Under both *Stinson* and *Kisor*, the commentary's radical expansion of the definition of minor to include an undercover officer should not be given any weight because it is an unreasonable interpretation of the clear guideline.

The Third Circuit very recently applied the holding and reasoning of *Kisor* directly to the commentary to a sentencing guideline and determined that an explicit definition within the commentary should not be afforded any weight because it is not reasonable. In *United States v. Banks*, the Third Circuit determined that the Sentencing Commission's definition of "loss" within the commentary to § 2B1.1 to include intended loss should be accorded no weight. *United*

*States v. Banks*, 55 F.4th 246, 255-259 (3rd Circuit, 2022). In the commentary to the fraud guideline, the Sentencing Commission states that loss is the greater of actual or intended loss. USSG § 2B1.1, App. Note 3(A). However, the Third Circuit determined that despite this clear definition, the inclusion of intended loss went beyond the ordinary meaning of "loss" within the guideline itself. *Banks* at 258. Because the expanded definition was unreasonable, it cannot be accorded any weight. Id.

The result should be the same in this case. This Court can determine the meaning of "minor" by simply reading a dictionary or the statute. The guideline itself is thus not genuinely ambiguous. But even if the Court determines that it is, the Sentencing Commission's inclusion of an undercover officer is not reasonable and thus should not be accorded any weight.

The principle of proportionate punishment would be violated by punishing communications with an undercover officer the same as communications with an actual minor. That is because the harm is greater when the communications are directly with an actual minor. Yet the unreasonable commentary definition of minor treats the two situations as exactly the same. To apply the enhancements to cases with undercover officers just the same as with actual minors, the Sentencing Commission should have proceeded under its Congressional grant of authority and subjected the definition to the same rigorous, public approval process and included the definition within the guideline itself. Instead, by including an unreasonable definition only within the commentary, the Commission deprived that definition of the weight of the actual guideline.

Without the two-point enhancements for inducement of a minor and use of a computer to induce a minor based on the unreasonable definition of minor to include an undercover officer pretending to be a minor, the Adjusted Offense Level for Group One should be 28 rather than 32.

PSR ¶¶ 25a, 26, 30. Without the five-point enhancement for pattern of activity involving a minor, the Adjusted Offense Level for Group Two should be 37 rather than 42. PSR ¶¶ 33a, 39. Because the two offense levels are nine levels apart, there is no increase to the higher offense level, leaving the Combined Adjusted Offense Level at 37. Subtraction of three points for acceptance of responsibility leaves the Total Offense Level at 34, where the advisory range in Criminal History Category I is 151-188 months.

> B. <u>The two-point enhancement for knowingly misrepresenting one's identity to induce a minor also does not apply either because the misrepresentation was minor or because the basis is separate, unrelated conduct that is not part of the offense</u>.

The probation department has applied a two-point enhancement to Group One based on information that Mr. Plummer misrepresented his identity to induce a minor to engage in prohibited conduct. PSR ¶¶ 16, 25a, p. 29 (Probation Officer's Response to Defense Objection #1); USSG § 2G1.3(b)(2). For the reasons argued above, this enhancement does not apply because there was no actual minor.

In response to the Defendant's Objection to this enhancement as included within the Second Addendum to the Presentence Report (PSR), the probation department maintained that the enhancement applies but changed the basis on which it relied to make that determination without explicitly making the change clear. In the December 13, 2022 version of the PSR, the enhancement was applied based on allegations that Mr. Plummer used the identity of "Samantha Smith" to communicate with a person who claimed to be a minor. See PSR ¶ 16; ¶ 25a (December 13, 2022 version). However, in the most recent version of the PSR, dated January 26, 2023, the basis for the enhancement is the allegation that his account name in the offense of

8

conviction was "Patrick Smith" and that in unrelated, uncharged conduct his user name was "Patrick Dyer." PSR ¶ 25a; Probation Officer's Response to Defendant's Objection #1, p.29.

To the extent that probation asserts the enhancement applies based on the defendant employing a user name other than than his true last name in the offense of conviction, that difference is not a sufficient misrepresentation to trigger the enhancement. See *United States v. Grauer*, 701 F. 3d 318, 326 (8th Cir. 2012) (one-time misrepresentations of age and last name may not be enough to justify the enhancement, but unnecessary to resolve the issue because additional evidence was sufficient). On this point, the government believes that the enhancement technically applies but does not advocate for its consideration in the defense's actual sentence based on the limited nature of the "misrepresentation" in this case. Dkt. 64, Government's Sentencing Memorandum, p.6.

To the extent that the probation department is relying on alleged misrepresentations of Mr. Plummer's identity in conduct other than the offense of conviction, those bases do not qualify for the enhancement because they do not constitute "the offense" as required in the guideline.

The Sentencing Guidelines define "offense" as "the offense of conviction and all relevant conduct under §1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." USSG § 1B1.1 n.1(I). In turn, "relevant conduct" constitutes the defendant's conduct "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG §1B1.3(a).

Misrepresentations of identity do not qualify for the enhancement unless they were committed during the offense of conviction, in preparation for that offense, or as part of an

9

attempt to avoid detection or responsibility for that offense. Communications outside the offense of conviction are similar to the facts of *United States v. Castillo*, 981 F.3d 94 (1st Cir. 2020). In *Castillo*, the First Circuit vacated a sentence because the District Court erroneously applied a cross-reference in a sexual abuse case because the purported basis was separate from the offense of conviction. *Castillo* at 104-105.

Should the Court determine that this two-point enhancement does not apply, but that the other enhancements involving a "minor" do apply despite the arguments above, the ultimate advisory range would be unchanged because the offense level for Group Two would remain unchanged and that is the offense level which leads to the Total Offense Level because of the degree of difference between the offense levels of the two groups.

### III. Because it is not empirically grounded, the child pornography guideline results in an excessive and unjust range even when enhancements are correctly applied.

Despite being in Criminal History Category I by virtue of being assigned 0 criminal history points, the correct guideline sentencing range for Patrick Plummer is 151 to 188 months. This is a result of enhancements which do not meaningfully distinguish Mr. Plummer'sconduct from other child pornography cases. Thus, the guidelines range is unreasonable when viewed in light of the sentencing factors of § 3553(a).

It is now axiomatic that the guidelines are "not to be *presumed* reasonable." *Nelson v. United States*, 555 U.S. 350, 252 (2009) (per curiam) (original emphasis). Indeed, the child pornography guideline is now acknowledged to be frequently *unreasonable* because it has been dictated by Congress and not supported by empirical data. . See *United States v. Dorvee*, 616 F.3d 174 (2nd

Cir. 2010). The Second Circuit has described it as "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." *Dorvee*, 616 F.3d at 188. The First Circuit has acknowledged such criticisms of the guideline: "Let us be perfectly clear. We are not unsympathetic to concerns about perceived harshness in the child pornography guidelines." *United States v. King*, 741 F.3d 305, 309 (1st Cir. 2014).

At the direction of Congress, the Sentencing Commission has amended the child pornography guideline several times since its introduction in 1987, each time raising the base offense level and/or enhancements without any basis in empirical data. *Dorvee* at 184. In light of this fundamental flaw, the *Dorvee* Court further analyzed how the mechanical application of the child pornography guidelines was "fundamentally incompatible with § 3553(a)." *Dorvee* at 187. Specifically, the Court addressed the numerous enhancements that apply in almost every case, including image of a prepubescent minor (+2), use of a computer (+2), image of sadistic or masochistic conduct (+4), and the presence of more than 600 images (+5). *Id*. These are some of the unreasonable enhancements which have been applied against Patrick Plummer.

The government agrees that the Court should make adjustments to the actual sentence based on the specific facts of the case. Specifically, as to the controlling offense level for Group Two, which is based on the presence of child pornography in this case, the government argues that the two-point enhancement for use of a computer should be discounted and the four-point enhancement for the presence of images involving sadism/masochism or an infant/toddler should be reduced to two points based on the specific facts of this case. In the government's view, a practical application of the guidelines based on the specific facts of this case would thus reduce theTotal Offense Level from by four points from 39 to 35 and result in an advisory range of 168-

11

210 months. Dkt. 64, Government's Sentencing Memorandum, p. 19. The government thus recommends a sentence of 168 months.

The defense appreciates the government's acknowledgment of the inherent flaws in the child pornography but submits that it does not go far enough as applied to Patrick Plummer. To begin with, the correct starting point for considering whether the child pornography range is excessive in a particular case must of course be the correct offense level. For the reasons argued above, the correct offense level in this case, derived from the child pornography guideline as applied to Group Two, is 34. The range at offense level 34 for Criminal History Category I is 151 to 188 months. That is the point from which certain enhancements should be discounted based on the practical application of the guidelines advocated by the government.

The most obviously meaningless enhancement within the child pornography is the two-point enhancement for use of a computer. Subtracting that enhancement alone from the correct offense level results in an offense level of 32, which in Criminal History Category I yields an advisory range of 121-151 months, where the low end nearly meets the mandatory minimum advocated by the defense. If the Court also discounted two points from the four-point enhancement for images that are sadistic/masochistic and/or of infants or toddlers, the offense level would drop to 30 and the advisory range to 97-121 months, where the mandatory minimum becomes the high end of the range.

Even if the Court accepted the government and probation's view of the technical application of the guidelines, additional enhancements beyond those conceded by the government should be discounted. The two-point enhancement for images of a prepubescent minor addresses the same

concern- the content of the images and age of the victims- that is addressed by the sadistic/masochistic and toddler/infant enhancements.

In addition, even if the Court finds that the five-point enhancement for pattern of activity applies based on Mr. Plummer's communication with undercover officers in more than one case, the actual sentence should account for the fact that the harm from communicating in this way with an actual minor is much greater than with an undercover officer. Harm is an important consideration in sentencing. So is the defendant's intent. While those should be separate considerations, the guidelines treat inappropriate communications with an undercover officer as equally harmful to inappropriate communications with an actual minor. That is simply not the case. If the Court applies the five-point enhancement for a pattern of activity involving "minors" even though there is no evidence that any actual minors were involved in this case, the Court should consider discounting that enhancement to two points rather than five.

Even starting from the incorrect Total Offense Level of 39, practical reductions from an excessive and unreasonable guideline should result in a range that calls for the mandatory minimum of 120 months. The Court should subtract the two points for use of a computer, three points from the "pattern of activity" enhancement, and at least two points from the total of six based on the content of the images and age of the victims. Subtracting those seven levels from probation's calculation of the Total Offense Level as 39 would result in an offense level of 32, where the advisory range is 121-151 months.

### IV. Mr. Plummer's history and characteristics also support a sentence of 120 months.

Patrick Plummer's "history and characteristics" are a required consideration under 18 U.S.C. § 3553(a)(1) in determining what sentence is "sufficient but not greater than necessary." The information contained within the PSR and in the thoughtful letters of support from his family show that he is a mild-mannered, hardworking man who was hiding his shameful behavior but who is prepared to fully rehabilitate himself now that he has accepted the consequences of his actions.

Patrick Plummer was born into a poor family in rural Maine. PSR ¶ 58. His parents separated when he was two years old, from which point he continued to live with his mother. Id.

Patrick's mother then entered into a relationship with a man who would go on to physically abuse Patrick starting at just five years old. Id. His brothers were also physically abused, and so was their mother whenever she tried to intervene. Id. Law enforcement was never contacted in order to try to keep the tragic situation secret, but the abuse was frequent enough that young Patrick was sent to spend time with his grandparents in order to escape his stepfather. Id.

Patrick's mother Michelle Kennedy has written a letter to the Court to show support for her son and to provide information about him. Exhibit A, Letter of Michelle Kennedy. She explains how her young son responded to the abuse by becoming quiet and secluded. Id at p. 2. She believes that the abuse also led to his abuse of cannabis products to try to manage the trauma. Id. Both of these factors- a history of trauma and substance abuse- likely contributed to Mr. Plummer's offenses and would benefit from the treatment that will be required of him while incarcerated and while on supervision after his release.

Despite his traumatic history and poor beginnings, Patrick Plummer showed himself to be a hard worker who can overcome adversity. He showed the dedication to become an Eagle Scout. Id. When he became interested in learning how to play guitar, he saved enough to buy his own and then won a talent contest at summer camp. Id. Since he was a young child he has been curious about the workings of machines and eventually attended vocational school, leading to consistent employment doing auto repair for more than five years. PSR ¶¶ 67-71. He used this money to save enough to support his family and purchase a home for them. Exhibit A, Letter of Paul Kennedy. Without a high school degree, PSR ¶ 66, and with a history of trauma and substance abuse, Patrick Plummer very well could have become a young man with consistent court contact. His lack of a prior record, however, appears to be a result of having multiple skills and positive characteristics that allowed him to make better choices in general. His conduct in this case, and the similarly shameful behavior he admitted to the police upon his arrest, PSR ¶ 11, appear to be the exception to the way he lived the majority of his life.

Because Patrick Plummer at his core wants to live a positive, law-abiding life, he has been able to accept responsibility in ways that go far beyond pleading guilty. He admitted his terrible conduct to the police upon his arrest. PSR ¶ 11. He pled guilty knowing that he would receive at least a ten-year sentence. He has been honest with his family about the shameful things he has done. See generally Exhibit A, Letters of Support for Patrick Plummer. He has written a letter to the Court expressing sincere remorse. Exhibit B, Letter of Patrick Plummer.

Patrick Plummer has also accepted responsibility by beginning the long process of rehabilitation. He has not been idle during his pretrial detention. He has participated in individual counseling. Exhibit C, Documentation of Programming, Letter of Kasey Locke. He has also

completed a 10-week psychoeducation group called Mending Minds and earned a certificate. Exhibit C. He attends Bible study regularly. Id. He obtained employment at the jail where he is held. Exhibit B. These are all actions of a man who wants to make change and who has begun that process. The Supreme Court has held that such post-incarceration rehabilitation may support a downward variance from the advisory range. *Pepper v. United States*, 562 U.S. 476, 481 (2011) (holding that post-sentencing rehabilitation may support a downward variance at resentencing).

Fortunately for Mr. Plummer, when he is eventually released he will have the love and support of his family to help him reintegrate into society and continue his rehabilitation in an even more meaningful way. His mother, stepfather, grandparents, uncle, and a close family friend have all written letters of support for him. They acknowledge the severity of his crimes and make no excuses for his behavior. Yet they know of Mr. Plummer's resilience and will be ready to assist him upon release. This support makes Mr. Plummer less likely to recidivate, particularly in combination with strict conditions of supervision, and thus is another justification for the downward variance recommended by the defense.

V.      **Conclusion**

As the Court is well aware, Patrick Plummer's first sentence of any kind must be for at least 10 years in federal prison. Because the guidelines that recommend a longer sentence are flawed, because Mr. Plummer has meaningfully accepted responsibility and begun his rehabilitation, and because he has the support and skills to succeed in the future, there is no

justification for anything longer. His sentence will be painful. It has already resulted in serious consequences for him and will continue to do so for many years. For all these reasons, 10 years is enough because it is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a).

                    Respectfully submitted,
                    PATRICK PLUMMER
                    by his attorney

                    */s/ Joshua Hanye*
                    Joshua Hanye, BBO#661686
                    FEDERAL PUBLIC DEFENDER OFFICE
                    51 Sleeper Street, 5th Floor
                    Boston, MA 02210
                    617-223-8061

## Certificate of Service

I, Joshua Hanye, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

Date: January 29, 2023                                                       */s/ Joshua Hanye*
                                                                                         Joshua Hanye